**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DANNIE R. HAYWARD, SR. (#301013)**         **CIVIL ACTION**

**VERSUS**

**WARDEN WILLIE DOUGLAS, ET AL.**        **NO. 07-0072-FJP-DLD**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 1, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DANNIE R. HAYWARD, SR. (#301013)**                                **CIVIL ACTION**

**VERSUS**

**WARDEN WILLIE DOUGLAS, ET AL.**                                   **NO. 07-0072-FJP-DLD**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the Motions to Dismiss of defendants Warden Willie Douglas, Sheriff Greg Phares, Sheriff Sidney Gautreaux, III, Richard Johnson, Kyle Ford, Aaron Gray, Eugene Marbe, and Dmitri Williams, rec.doc.nos. 92 and 139.[1] These motions are opposed.

The pro se plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden Willie Douglas, Sheriff Greg Phares and, through the filing of amended Complaints, certain named and un-named nurses and deputies employed at the prison, complaining that the defendants violated his constitutional rights in 2006 at EBRPP through deliberate medical indifference, through verbal abuse, and through deprivation of food, water and medication on a single day.

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order

---

[1] Certain defendants employed by Prison Medical Services, have not participated in the instant motion.

to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" Bell Atl. Corp. v. Twombly, supra, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or the "formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, supra. See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court stated that there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, but "something beyond ... mere possibility ... must be alleged." Id. The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra. Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, as amended, the plaintiff alleges that he was placed into the custody of the EBRPP on March 1, 2006. At that time, he advised unidentified prison officials that he suffered with Type I Diabetes and high blood pressure, that he had a broken jaw which had recently been wired shut, and that he needed medications for these conditions and for his severe pain. Notwithstanding, unnamed security officers ignored his complaints and did not notify prison medical staff. As a result,

the plaintiff's complaints were allegedly ignored by unidentified security officers and health care providers until, on March 18, 2006, a fellow inmate obtained and filled out a medical request form on the plaintiff's behalf.  The plaintiff complains, however, that this request was mis-characterized by a prison nurse as a mere toothache, and it was not until March 28, 2006, ten days later, that he was actually seen by a physician at the prison, at which time the physician scheduled the plaintiff for "emergency surgery" for his jaw at Earl K. Long Hospital ("EKL") in Baton Rouge, Louisiana.  In addition, on that date, the plaintiff informed prison officials that he was being denied his diabetes medication by a nurse identified as Nurse Lilian or Nurse Cathy and by defendant deputy Gray.  It was not until the plaintiff called family members and his attorney that he was provided with insulin.  On March 29, 2006, when the plaintiff's blood sugar level was still high, an unidentified medical provider changed the plaintiff's medication to one which the plaintiff advised caused an adverse effect.  This allegedly caused the plaintiff's blood sugar level to "bottom out" at a level of 68, and when the plaintiff complained of symptoms resulting from this condition, he was "forced" to eat a "honey bun" by the nurse, which caused his blood sugar level to rise to a dangerous high of 221.  The plaintiff further complains that when the date of his scheduled jaw surgery in April apparently conflicted with a scheduled court date, the surgery was rescheduled, and the plaintiff was not transported to EKL for surgery until April 26, 2006, and surgery was not performed until May 1, 2006, at which time his jaw was re-broken and new surgical pins were inserted.  After the surgery, which occurred on the afternoon of May 1, 2006, the plaintiff was placed in a guarded room at EKL, and he complains that when he requested medication for his diabetes and high blood pressure, the unidentified EBRPP security officer refused to contact EKL personnel to obtain such medication.  The next morning on May 2, 2006, the plaintiff was released by EKL to return to the prison, and he complains that for the remainder of that day, notwithstanding explicit instructions from EKL personnel to an unidentified EBRPP security officer before transport, he was denied food, fluids, and medication for his pain and high blood pressure by defendant Nurse Jolynn and by defendant deputies Johnson and Wilson.  It was not until 10:30 that evening that he was provided with

medication for his pain, and it was not until the shift changed the next day, on May 3, 2006, that his condition was noted to have worsened, and he was returned to EKL, where he was allegedly found to be suffering from severe dehydration and high blood pressure. After treatment on that date, he was returned to EBRPP, but he complains that he was only provided with hard food (which he could not eat) and medication at 6:30 p.m., and no other medication until 5:30 the next morning. Although the plaintiff was assured at that time that he could thereafter receive his prescribed pain medications every four to six hours upon request, he complains that during Nurse Jolynn's ensuing shifts, beginning on May 5, 2006, and continuing until his transfer from EBRPP in October, 2006, he was denied appropriate medication in retaliation for his complaints regarding this defendant. He further complains that his administrative grievances filed against prison officials have been routinely denied by defendant Carla Hawkins, "consistent with the accepted policy or established practice of simply denying" prison grievances. Finally, the plaintiff complains that on May 25, 2006, at approximately 4:00 a.m., defendant Nurse "Kietsha", later identified as Nurse "Rekiesha Scott", failed to provide needed insulin notwithstanding that the plaintiff's sugar level was noted to be an unsafe 268. When the shift changed at 5:00 a.m., and the plaintiff still had not received his insulin, he complained to defendant deputy Ford regarding such failure, but defendant Ford took no action to ameliorate this situation, allegedly because "deputy Ford had no policy to guide him in reporting the improper conduct." The plaintiff further complains that, upon admission to EBRPP in March, 2006, prison health care providers failed to order him the many medications (13 in number) which he had taken prior to incarceration, but instead provided other medications for his diabetes and high blood pressure which did not work as effectively. The plaintiff also complains that each of the defendants often subjected him to threats, taunts, and verbal abuse and harassment.

In response to the plaintiff's allegations, the moving defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims made against them. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.[2]

Initially, it appears that the plaintiff has named the defendants in both their individual and their official capacities. Notwithstanding, § 1983 does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties. Neither a state, nor its officials acting in their official capacities, are "persons" within the meaning of § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim under § 1983 against the defendants in their official capacities.[3]

---

[2] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

[3] Although the plaintiff has also included a prayer for declaratory and injunctive relief, and although a claim for such relief may be asserted against state officials in their official capacities, see Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); 15 Am.Jur.2d Civil Rights § 101, this claim has been mooted by the plaintiff's transfer from EBRPP. As a general rule, the transfer of an inmate to a different place of confinement moots his claim for injunctive and declaratory relief relative to events occurring at his former place of confinement. See, e.g., Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001).

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the Court notes that inasmuch as the plaintiff in this case was, at all times pertinent hereto, a pretrial detainee and not a convicted felon, his constitutional rights flow from the Due Process Clause of the Fourteenth Amendment instead of from the Eighth Amendment's prohibition against cruel and unusual punishment. Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1976) (en banc), citing Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Courts apply different tests when "analyzing constitutional challenges by pretrial detainees" depending upon whether the challenge is classified "as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" Scott v. Moore, 114 F.3d 51 (5th Cir. 1997) (en banc), quoting Hare, supra. Challenges to general conditions of confinement require the application of "the reasonable relationship test of Bell v. Wolfish, [supra]." Under that test, "a constitutional violation exists only if [the Court finds] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." Id. If the complained-of harm is a particular act or omission of one or more officials, however, the action is characterized as an "episodic act or omission" case. See Hare, supra. To prove a violation of constitutional rights in connection with an episodic act or omission case, a detainee must establish that prison officials acted with subjective deliberate indifference as set forth in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

In the instant case, the plaintiff alleges that the moving defendants failed to provide him with appropriate medical care and subjected him to abuse and verbal harassment. This specific complaint does not attack the rules or conditions existing at EBRPP, but rather concerns acts or omissions of prison officials in failing to provide him proper medical care. Thus, the plaintiff's claim relative to the denial and delay of medical care should be analyzed under the "episodic act or omission" standard. See, e.g., Stevenson v. Anderson, 2002 WL 432889 (N.D. Tex., Mar. 18, 2002) (holding that the plaintiff's claim that the defendants denied him medical care was an "episodic" claim). In any event,

the courts have held that the deliberate indifference standard applicable to episodic claims is "functionally equivalent" to the reasonable relationship standard applicable to conditions claims. Scott v. Moore, supra. Thus the Farmer v. Brennan deliberate indifference standard is the appropriate standard for the plaintiff's claim of denial of medical care claim in the instant case. The deliberate indifference standard sets a high bar: the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Applying the foregoing analysis, the Court concludes that the moving defendants are entitled to qualified immunity in connection with the plaintiff's claims asserted against them. Specifically, the Court agrees with the moving defendants that the plaintiff has failed to allege sufficient personal participation by them in any violation of the plaintiff's constitutional rights. In this regard, pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983). Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege

that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra.

Initially applying this standard in connection with the plaintiff's claim asserted against former Sheriff Greg Phares, current Sheriff Sidney Gautreaux, and EBRPP Warden Willie Douglas, the Court concludes that the defendants' motion is well-founded. The plaintiff makes no factual assertion whatever that these defendants had any direct or personal involvement in his medical care and treatment at EBRPP, either on the date of his arrival at the prison in March, 2006, or thereafter. As the former and current Sheriff of East Baton Rouge Parish and the Warden at EBRPP, respectively, it is clear that these defendants stand only in a supervisory role with regard to the operation of the prison and its personnel.[4] Moreover, with regard to medical care provided at the prison, the plaintiff concedes, as asserted by the defendants in their motion, that such care is provided, not by the Sheriff, warden or prison security personnel, but by Prison Medical Services, which is a division of the East Baton Rouge Parish Department of Emergency Medical Services ("EMS"). As such, the plaintiff acknowledges that the Sheriff and security personnel employed at the prison do not provide medical care to prisoners confined at EBRPP and are not trained to do so. Nor does he dispute the moving defendants' assertion that, inasmuch as these defendants are not medically trained, they rely upon the medical expertise of EMS personnel assigned to work at the prison. Accordingly, it is clear that the plaintiff has failed to allege the requisite personal participation by these defendants in the violations alleged.

---

[4] In fact, although the plaintiff did not name the current sheriff as a defendant in this proceeding, Sidney Gautreaux has appeared herein, presumably because the plaintiff sought equitable relief and presumably because a successor governmental official named in his official capacity is automatically substituted when a former official leaves office and is replaced. See Fed. R. Civ. P. Rule 25(d). In any event, the plaintiff concedes that Sheriff Gautreaux was not the sheriff at the time of the plaintiff's confinement at EBRPP and had no involvement with the events complained of in this proceeding. See rec.doc.no. 143 at p. 8 (acknowledging that defendant Gautreaux "was not the sheriff at the time of these incidents and should not be a part of this case.").

Further, to the extent that the plaintiff complains that these defendants should be found responsible for their failure to intervene when they learned of the plaintiff's complaints through his administrative grievances and/or through telephone calls received from the plaintiff's family members or attorney(s), the law is clear that the plaintiff is not constitutionally entitled to an investigation of his complaints or administrative grievances or to a favorable response thereto. Specifically, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

Accordingly, the plaintiff's claim regarding the alleged failure of defendants Phares, Gautreaux or Douglas to properly investigate and/or respond to his administrative grievances or complaints is without legal foundation and must be dismissed. The defendants, untrained in the provision of medical care, may not be expected to intervene whenever an inmate complains that he is unhappy with the medical care which has been provided to him. This is even more true when the medical care is administered by a separate governmental entity over which the defendants have no direct supervisory control. Accordingly, inasmuch as the plaintiff does not allege that the defendant sheriffs or warden had any direct or personal participation in the provision of his medical care at the prison, there is no basis for any finding of liability against them.

Finally, the plaintiff includes various conclusory assertions in his Complaint, as amended, that EBRPP supervisory officials had an established policy or practice of denying prompt and reasonable medical attention to pretrial detainees, of denying due process to inmates who have filed grievances regarding the denial of medical care, and of punishing inmates who have complained to prison officials regarding the denial of such care. The plaintiff's allegations, however, fail to support a conclusion that any supervisory defendant was responsible for the implementation of such an

unconstitutional policy. Not only are conclusory assertions of a deficient policy insufficient to support a claim under § 1983, see Jakobe v. Dallas County, Tex., 2010 WL 4514460 (N.D. Tex., Sept. 23, 2010), but supervisory liability may be found to exist only when a policy is so deficient that the policy itself is a repudiation of constitutional rights, as when a policy exists which the defendant supervisors know will "expose prisoners to a substantial risk of significantly unmet serious medical needs." Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). The plaintiff's conclusory factual allegations reflect, however, that EBRPP had in place a procedure pursuant to which inmates were provided with medical care by Prison Medical Services, and the record reflects that the plaintiff did in fact receive a substantial amount of care while confined at EBRPP. Although he complains of various delays and alleged intentional denials in the provision of medical care by nurses employed by Prison Medical Services, he concedes that he was ultimately provided with medication for his high blood pressure and diabetes (although not the kind that he wanted), that his blood pressure and blood sugar were monitored (although not as often as be believed appropriate), that he was twice transported to EKL for attention to his wired jaw (although not as soon as he wished), and that he was provided with pain medication and food after such surgery (although assertedly nor for hours after returning from EKL). On these facts, there is no indication of an alleged wrongful policy for which the defendant sheriffs and warden may be found responsible. Although the plaintiff complains of periodic breakdowns in the implementation of these procedures, through alleged wrongful conduct on the part of individual employees, these sporadic and episodic breakdowns do not lead to a conclusion that the policy itself was a repudiation of constitutional rights or exposed inmates to "a substantial risk of significantly unmet serious medical needs", of which the supervisory defendants were subjectively aware. Thompkins v. Belt, supra. Supervisory liability based upon an alleged unconstitutional policy may not be found where the system has only failed in isolated instances and cannot be inferred from isolated single wrongful acts. Id. Accordingly, the Court finds that the plaintiff's assertions of supervisory liability in the instant case are unfounded and insupportable.

Turning to the plaintiff's claims asserted against the remaining defendants who have participated in the instant motions, EBRPP security officers Kyle Ford, Aaron Gray, Richard Johnson, Eugene Marbe and Dmitri Williams, the Court finds that these claims must be dismissed for similar reasons.[5] Specifically, the Court finds that the plaintiff has failed to allege sufficient facts suggesting that these defendants have personally and directly participated in any violation of the plaintiff's constitutional rights through deliberate medical indifference. Other than generalized non-specific allegations of wrongdoing on the part of these and other unidentified officers, the plaintiff provides very little factual detail relative to any individual and/or particularized conduct engaged in by these defendants. In fact, the sole <u>specific</u> examples of conduct undertaken by the moving defendants on specific dates is as follows:

> On March 28, 2006, an EMS nurse identified as "Nurse Cathy" or "Nurse Lillian", <u>and defendant Aaron Gray</u> denied him his insulin medication and subjected him to arrogance and insults. The plaintiff complains that it was not until he called his attorney and family members, and they in turn called the prison, that he was finally given his insulin medication. He further complains that this behavior was in "retaliation for ... persistent grievances and complaints about the mistreatment [he] had endured in trying to obtain prompt reasonable medical care." Rec.doc.no. 1 at ¶ 6.
>
> On May 2, 2006, upon return from EKL with a wired jaw after surgery, an EMS nurse identified as "Nurse Jolynn" <u>and defendant Richard Johnson</u> denied him food and medication and instead, "spent hours laughing and taunting me because of my severe pain." Rec.doc.no. 1 at ¶ 11. In his response to the defendants' Motion to Dismiss, rec.doc.no. 93, the plaintiff includes the additional allegation that defendants <u>Aaron Gray</u> and <u>Eugene Marbe</u> were also on duty on that date and participated in taunting the plaintiff. He asserts that all three deputies cursed and threatened him, and that defendant <u>Eugene Marbe</u>, instead of bringing him a liquid diet for his evening meal, brought him a regular tray of food, "because Nurse Williams forgot to tell them in the kitchen." Rec.doc.no. 93 at ¶ 4.
>
> At approximately 4:00 a.m. on the morning of May 25, 2006, the plaintiff was allegedly discovered to have high blood sugar by an EMS nurse identified as "Nurse Kietsha", but this nurse failed to provide insulin. When the shift changed at 5:30 a.m. and the plaintiff still had not received any insulin, he notified defendant <u>Kyle Ford</u>, but the defendant failed to take any action because there was "no policy to guide him in reporting the improper conduct." Rec.doc.no. 1 at ¶ 13.

---

[5] It should be noted that the plaintiff has also named as defendants in this proceeding nurses who were employed by Prison Medical Service and who were tasked with providing the plaintiff with medical care while confined at EBRPP. These medical defendants are not participants in the instant motion, and the Court will address the potential liability of these defendants in a separate Report.

Other than these specific instances of alleged wrongdoing, the plaintiff has made only generalized assertions that on unspecified dates, EBRPP deputies generally did whatever the nurses told them to do and failed to intervene when the nurses did not provide him with prescribed medicine or failed to respond to the plaintiff's complaints of pain. Although he also asserts that the defendant security officers sometimes participated in this abuse, he provides no specific examples of such participation other than as above-related.

In the Court's view, the plaintiff's factual allegations of specific acts of misconduct and non-specific generalized behavior are simply insufficient to support his claim asserted against them. Initially, the Court notes that the plaintiff's allegations of taunts, verbal abuse, curses and threats do not rise to the level of a constitutional violation. The law is clear in this regard that allegations of verbal abuse and harassment alone do not present claims under section 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). The allegations against the defendants regarding threats, curses and verbal abuse, therefore, are insufficient to state a claim of constitutional dimension.

Further, with regard to the plaintiff's claim that the defendants participated with EMS personnel in denying him medical care, the Court fails to see sufficient factual specificity to support the plaintiff's claim. Clearly, the plaintiff was unhappy with the medical care which he was provided at EBRPP, but he concedes that the moving defendants were not primarily responsible for providing such care. In fact, he unequivocally points to the EMS nurses as the persons who principally failed in their duty to provide medical care, and he acknowledges in one pleading that Nurse Jolynn Williams did not like him and was the "main" culprit in denying him medical care, see rec.doc.no. 140-1. It appears that the plaintiff's principal claim against the defendant security officers, who the plaintiff concedes were neither trained for nor tasked with providing him with medical care, is that

they subjected him to verbal abuse as above indicated and that they failed to intervene when the EMS personnel failed to properly attend to his medical needs. As with the defendant Warden and Sheriff, however, it is not to be expected that prison security officers, who are untrained in the provision of medical care, would be required to intervene in the plaintiff's medical care when it is neither their job nor their training to do so. And to the extent that the plaintiff asserts that the defendant security officers also personally participated in denying him medical care, this assertion is wholly conclusory, and the plaintiff fails to provide sufficient factual details relative to such failure. Accordingly, on the record before the Court, it appears that the plaintiff has failed to state a claim against the moving defendants and that they are entitled to dismissal from this proceeding.

## RECOMMENDATION

It is recommended that the Motions to Dismiss of defendants Warden Willie Douglas, Sheriff Greg Phares, Sheriff Sidney Gautreaux, III, Richard Johnson, Kyle Ford, Aaron Gray, Eugene Marbe, and Dmitri Williams, rec.doc.nos. 92 and 139, be granted, dismissing the plaintiff's claims asserted against these defendants, with prejudice, and that this matter be referred back for further proceedings.

Signed in Baton Rouge, Louisiana, on March 1, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**