## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DANNIE R. HAYWARD, SR. (#301013)**                         **CIVIL ACTION**

**VERSUS**

**WARDEN WILLIE DOUGLAS, ET AL.**                         **NO. 07-0072-FJP-DLD**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DANNIE R. HAYWARD, SR. (#301013)**　　　　　　　　**CIVIL ACTION**

**VERSUS**

**WARDEN WILLIE DOUGLAS, ET AL.**　　　　　　　　**NO. 07-0072-FJP-DLD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the cross-motions for summary judgment of the plaintiff and defendants Pam Porter, Carla Hawkins, Cathy Roule and Jolynn Williams, rec.doc.nos. 187, 211 and 214, and the Motion to Dismiss of defendant Garry Wilson, rec.doc.no. 220.[1]

The pro se plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden Willie Douglas, Sheriff Greg Phares and, through the filing of several amended Complaints, certain named and un-named nurses and deputies employed at the prison, complaining that the defendants violated his constitutional rights in 2006 at EBRPP through deliberate medical indifference, through verbal abuse, and through deprivation of food, water and medication, principally on a single day.  Pursuant to earlier Report and Recommendation, approved by the District Judge on March 16, 2011, see rec.doc.nos. 92 and 166, the plaintiff's claims asserted against Warden Willie Douglas, Sheriff Greg Phares, Sheriff Sidney Gautreaux, III, and Deputies Richard Johnson, Kyle Ford, Aaron Gray, Eugene Marbe, and Dmitri Williams have been dismissed.

Addressing first the parties cross-motions for summary judgment, the plaintiff moves for summary judgment relying upon the pleadings and, apparently, upon the unsworn allegations

---

[1]　　Defendant Nurse R. Scott has not been served with process in this proceeding and has not participated in the instant motions.

contained within his Complaint, as amended, together with references to excerpts from his medical records and administrative proceedings.

Defendants Porter, Hawkins, Roule and Williams move for summary judgment, relying upon the pleadings, a Statement of Material Facts as to Which There is no Genuine Issue to be Tried, a certified copy of the plaintiff's medical records, a certified copy of the plaintiff's administrative remedy proceedings, and a Time Line Summary of the medical services provided to the plaintiff while he was confined at EBRPP.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving parties carry their initial burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that he is entitled to a verdict in his favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most

favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his unsworn Complaint, as amended, the plaintiff alleges that he was arrested and placed into the custody of EBRPP on March 1, 2006. At that time, he advised unidentified prison officials that he suffered with diabetes and high blood pressure, that he had a broken jaw which had recently been wired shut, and that he needed medications for these conditions and for his severe pain. Notwithstanding, unnamed security officers allegedly ignored his complaints and did not notify prison medical staff. As a result, the plaintiff's complaints were allegedly ignored by unidentified security officers and health care providers until, finally, on March 18, 2006, a co-inmate obtained and filled out a medical request form on the plaintiff's behalf. The plaintiff complains, however, that his complaint was mis-characterized by a prison nurse as a mere toothache, and that it was not until March 28, 2006, ten days later, that he was actually seen by a physician at the prison, at which time the physician scheduled the plaintiff for "emergency surgery" for his jaw at Earl K. Long Hospital in Baton Rouge, Louisiana ("EKL").

Also on March 28, 2006, the plaintiff allegedly informed prison officials that he had been denied his diabetes medication by a nurse identified as Nurse Lilian or Nurse Cathy, and it was not until the plaintiff called family members and his attorney that he was provided with insulin on that date. The next day, March 29, 2006, when the plaintiff's blood sugar level was allegedly still high from the day previously, an unidentified medical provider changed the plaintiff's medication to one which the plaintiff warned would cause an adverse reaction. This medication allegedly caused the plaintiff's blood sugar level to "bottom out" at a level of 68, and when the plaintiff complained of symptoms resulting from this condition, he was allegedly "forced" to eat a "honey bun" by a nurse, which caused his blood sugar level to rise to a dangerously high level of 221.

The plaintiff next complains that when the date of his anticipated jaw surgery in April apparently conflicted with a scheduled court date, the surgery was rescheduled, and the plaintiff was not transported to EKL for surgery until April 26, 2006, and surgery was not performed until May 1, 2006, at which time his jaw was re-broken and new surgical pins were inserted. The plaintiff complains that prior to his transport to EKL on the morning of this surgery, defendant Williams denied him his insulin and, on the day after his surgery, May 2, 2006, when the plaintiff was released by EKL to return to EBRPP, defendant Williams denied him food, fluids, and medication for his pain and high blood pressure, notwithstanding explicit instructions from EKL personnel. Although the plaintiff concedes that defendant Williams wrote an order for the plaintiff to receive a prescribed liquid diet on that date, he complains that she mistakenly requested a regular food tray from the kitchen which the plaintiff could not eat. Further, it was allegedly not until 10:30 that evening that the plaintiff was provided with additional medication for his pain.

When the shift changed the next day, on May 3, 2006, it was discovered that the plaintiff's condition had worsened, and he was returned to EKL, where he was allegedly found to be suffering from dehydration. After treatment at EKL on that date, he was returned to EBRPP, but he complains that he was only provided with hard food (which he could not eat) and medication at 6:30 p.m., and no other medication until 5:30 the next morning.

Although the plaintiff was thereafter assured that he would receive his prescribed pain medication every four to six hours upon request, he complains that during Nurse Williams' ensuing shifts, beginning on May 5, 2006, and continuing until his transfer from EBRPP in October, 2006, he was denied appropriate medication by this defendant in retaliation for his complaints regarding the defendants' conduct. The plaintiff also complains that on May 25, 2006, at approximately 4:00 a.m., defendant Nurse R. Scott failed to provide needed insulin notwithstanding that the plaintiff's sugar level was noted to be an unsafe 268, and it was not until after the shift changed that morning, approximately 2 hours later, that he received his insulin.

The plaintiff further complains that his administrative grievances filed against prison officials were routinely denied by defendants Carla Hawkins and Pam Porter, "consistent with the accepted policy or established practice of simply denying" prison grievances, and that prison health care providers never provided him with the many medications (13 in number) which he notified prison officials he had taken prior to incarceration. Instead, prison officials allegedly provided him with other medications for his diabetes and high blood pressure which did not work as effectively, and also failed to monitor his blood sugar levels appropriately. Finally, the plaintiff complains that the defendants often subjected him to threats, taunts, and verbal abuse and harassment.

In response to the plaintiff's allegations, the defendant health care providers assert that they are entitled to qualified immunity in connection with the plaintiff's claims made against them. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to make a sufficient showing to support a finding that they participated in any violation of his constitutional rights.[2]

---

[2] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motion for summary judgment should be granted and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

Initially, it appears that the plaintiff has named the defendants in both their individual and their official capacities. Notwithstanding, § 1983 does not provide a federal forum for litigants who seek a remedy against a state for the alleged deprivation of civil liberties. Neither a state, nor its officials acting in their official capacities, are "persons" within the meaning of § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim under § 1983 against the defendants in their official capacities.[3]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the Court notes that inasmuch as the plaintiff in this case was, at all times pertinent hereto, a pretrial detainee and not a convicted felon, his constitutional rights flow from the Due Process Clause of the Fourteenth Amendment instead of from the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1976) (<u>en banc</u>), <u>citing</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). When faced with analyzing constitutional challenges made by pretrial detainees, courts have applied different tests, depending upon whether the challenges were classified "as an attack on a 'condition of confinement' or as an [attack on an] 'episodic act or omission.'" <u>Scott v. Moore</u>, 114 F.3d 51 (5th Cir. 1997) (<u>en banc</u>), <u>quoting</u> <u>Hare</u>, <u>supra</u>. Challenges to general conditions of confinement require the application of "the reasonable relationship test of <u>Bell v. Wolfish</u>, [<u>supra</u>]." Under that test, "a constitutional

_____

[3]        Although the plaintiff has also included a prayer for declaratory and injunctive relief, and although a claim for such relief may be asserted against state officials in their official capacities, <u>see</u> <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); 15 Am.Jur.2d Civil Rights § 101, this claim has been mooted by the plaintiff's transfer from EBRPP. Specifically, as a general rule, the transfer of an inmate to a different place of confinement moots his claim for injunctive and declaratory relief relative to events occurring at his former place of confinement. <u>See</u>, <u>e.g.</u>, <u>Herman v. Holiday</u>, 238 F.3d 660 (5th Cir. 2001).

violation exists only if [the Court finds] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." Id. If the complained-of harm is a particular act or omission by one or more officials, however, the action is characterized as an "episodic act or omission" case. See Hare, supra. To prove a violation of constitutional rights in connection with an episodic act or omission case, a detainee must establish that prison officials acted with subjective deliberate indifference as set forth in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

In the instant case, the plaintiff alleges that the moving defendants failed to provide him with appropriate medical care, subjected him to verbal abuse and harassment, and acted in retaliation for his complaints regarding their wrongful behavior. In the Court's view, these claims should be analyzed under the "episodic act or omission" standard. See, e.g., Stevenson v. Anderson, 2002 WL 432889 (N.D. Tex., Mar. 18, 2002) (finding that the plaintiff's claim that the defendants denied him medical care was an "episodic" claim). In any event, the courts have held that the deliberate indifference standard applicable to episodic claims is "functionally equivalent" to the reasonable relationship standard applicable to conditions claims. Scott v. Moore, supra. Thus the Farmer v. Brennan deliberate indifference standard is the appropriate standard for review of the plaintiff's claims in the instant case.

The deliberate indifference standard sets a high bar: the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Woodall v. Foti, 648 F.2d 268

(5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

In addition to the foregoing, in determining liability, it is necessary for the Court to review the conduct of each individual defendant to determine whether the plaintiff's allegations and evidentiary showing support a finding that that defendant exhibited deliberate indifference to the plaintiff's serious medical needs. See Tamez v. Manthey, 589 F.3d 764 (5th Cir. 2009) (mandating a showing that "each defendant acted with subjective deliberate indifference"). In this regard, it is well-settled that, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983). Broad generalized allegations of wrongdoing will not support a finding of liability in the absence of a showing that a particular defendant was personally involved in the alleged violation. Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law. Lozano v. Smith, supra.

Applying this standard first in connection with the plaintiff's claims asserted against Carla Hawkins and Pam Porter, the Court concludes that the defendants' motion is well-founded. The

plaintiff makes no factual assertion that these defendants were directly or personally involved in providing him with medical care and treatment at EBRPP, either on the date of his arrival at the prison in March, 2006, or thereafter. To the contrary, the only allegation that the plaintiff makes relative to these defendants is regarding their participation in rejecting his administrative grievances, specifically that defendant Hawkins signed the forms rejecting same and that defendant Porter participated as the "administrator over the whole department." See rec.doc.no. 132. Accordingly, it appears clear that these defendants stood principally in a supervisory or administrative role with regard to the provision of medical care to the plaintiff at the prison, and the plaintiff has thus failed to allege or show the requisite personal participation by these defendants in the violations alleged. Further, the plaintiff's contention that these defendants should be held responsible for their alleged mishandling of his administrative grievances or for their failure to intervene when they learned of the plaintiff's complaints is unfounded. The law is clear that the plaintiff is not constitutionally entitled to a thorough or complete investigation into his administrative grievances or complaints or to a favorable response thereto. Specifically, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

Accordingly, the plaintiff's claim regarding the alleged failure of defendants Carla Hawkins and Pam Porter to properly investigate and/or respond to his administrative grievances or complaints is without legal foundation and must be dismissed.

The plaintiff has also included various conclusory assertions in his Complaint, as amended, that EBRPP supervisory officials had an established policy or practice of denying prompt and reasonable medical attention to pretrial detainees, of denying due process to inmates who filed

grievances regarding the denial of medical care, and of punishing inmates who complained to prison officials regarding the denial of such care. To the extent that these allegations may be interpreted as implicating the supervisory or administrative roles of defendants Carla Hawkins and Pam Porter, they fail to support a conclusion that these defendants were responsible for the creation or implementation of such a policy. Not only are conclusory assertions of a deficient policy insufficient to support a claim under § 1983, see Jakobe v. Dallas County, Tex., 2010 WL 4514460 (N.D. Tex., Sept. 23, 2010), but supervisory liability may be found to exist only when a purported policy is so deficient that the policy itself is a repudiation of constitutional rights, as when a policy exists which the defendant supervisors know will "expose prisoners to a substantial risk of significantly unmet serious medical needs." Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). The plaintiff's conclusory factual allegations reflect, however, that EBRPP had in place procedures pursuant to which inmates were provided with medical care by Prison Medical Services, and the record reflects that the plaintiff did in fact receive a substantial amount of care while confined at EBRPP. Although he complains of various delays and denials in the provision of medical care by nurses employed by Prison Medical Services, he concedes that he was ultimately provided with medication for his high blood pressure and diabetes (although not the kind that he wanted), that his blood pressure and blood sugar were monitored (although not as often as be believed appropriate), that he was transported on multiple occasions to EKL for attention to his broken and wired jaw (although not as soon or as often as he wished), and that he was provided with medication and food after his surgery on May 2, 2006 (although assertedly nor for hours after returning from EKL on a single date). On these facts, there is no indication of an alleged wrongful policy for which defendants Hawkins and Porter may be found responsible. Although the plaintiff complains of periodic breakdowns in the implementation of these procedures, through alleged wrongful conduct on the part of individual employees, these sporadic and episodic breakdowns do not lead to a conclusion that any purported policy was itself a repudiation of constitutional rights or exposed

inmates to "a substantial risk of significantly unmet serious medical needs", of which risk the supervisory defendants were subjectively aware. Thompkins v. Belt, supra. Supervisory liability based upon an alleged unconstitutional policy may not be found where the system has only failed in isolated instances and may not be inferred from isolated wrongful acts. Id. Accordingly, the Court finds that the plaintiff's assertions of supervisory liability in the instant case are unfounded and insupportable.

Turning to the plaintiff's claims asserted against Nurses Jolynn Williams and Cathy Roule, these claims must also be dismissed. Specifically, the Court finds that the plaintiff has failed to refute the defendants' evidentiary showing and has failed to make a sufficient showing himself that these defendants personally and directly participated in any violation of the plaintiff's constitutional rights through deliberate medical indifference. Other than generalized non-specific allegations of wrongdoing on the part of the prison medical department, the plaintiff provides very little factual detail in his unsworn pleadings relative to individual and/or particularized conduct engaged in by these specific defendants. For example, a substantial part of the plaintiff's factual allegations relate to events occurring between his arrival at EBRPP on March 1, 2006, and his scheduled surgery on May 1, 2006, and these allegations include, with few exceptions, no specific complaints regarding the actions of defendants Williams and Roule. In fact, the sole specific examples of conduct related by the plaintiff in his unsworn Complaint and other pleadings as having been allegedly undertaken by the moving defendants on specific dates is as follows:

On March 4, 2006, Nurse Cathy Roule requested that the plaintiff sign a medical form to obtain his medical records from the Veterans' Administration, "but the records were never ordered."

On March 28, 2006, an EMS nurse identified as "Nurse Cathy" or "Nurse Lillian" (possibly defendant Cathy Roule) denied him insulin medication and subjected him to arrogance and insults. The plaintiff asserts that it was not until he called his attorney and family members, and they in turn called the prison, that he was finally given his insulin medication on that date. He further complains that this behavior was in "retaliation for ... persistent grievances and complaints about the mistreatment [he] had endured in trying to obtain prompt reasonable medical care." Rec.doc.no. 1 at ¶ 6.

The next day, on March 29, 2006, the plaintiff's blood sugar level was very high so the "treating person" changed the plaintiff's insulin medication, notwithstanding that the plaintiff advised that the new medication would give him an adverse reaction. Thereafter, as a result of the new medication, the plaintiff's blood sugar level "bottomed out" at a dangerously low level, and the nurse forced the plaintiff to eat a honey bun in order to raise his blood sugar level, which then returned to a dangerously high level. Rec.doc.no. 1 at ¶ 7. The treating nurse is not identified by name in the plaintiff's Complaint but may have been defendant Roule.

On May 1, 2006, prior to the plaintiff's transport to EKL for surgery, defendant Williams denied the plaintiff his insulin. As a result, health care providers at EKL provided him with insulin upon his arrival at the hospital on that date. See rec.doc.no. 216.

On May 2, 2006, upon return from EKL with a wired jaw after surgery, although the plaintiff was admittedly provided with insulin for his diabetes, see, e.g., rec.doc.no. 93 at ¶ 4, Nurse Williams denied him food for "most of the day", denied him medication for his pain and high blood pressure and, instead, "spent hours laughing and taunting" him because of his severe pain. Rec.doc.no. 1 at ¶ 11. In addition, although Nurse Williams filled out a medical request for the plaintiff to receive a liquid diet, she mistakenly ordered a regular food tray from the prison kitchen because she "forgot to tell them in the kitchen" that the plaintiff was on a liquid diet. Rec.doc.no. 94 at page 4. Rec.doc.no. 143 at ¶ 6. As a result, the plaintiff was unable to eat the food that was brought to him. It was not until approximately 10:30 that evening that he was provided with pain medication, and he was provided with "no food, no diabetes medicine, no liquids, [and] no antibiotics as were prescribed by the EKL doctor." As a result, his jaw became swollen, he ran a fever all night, and when the shift changed the next morning, he was discovered to be in distress and had to be returned to EKL "under emergency conditions", where he was determined to be suffering from dehydration.

On May 3, 2006, at approximately 2:30 p.m., the plaintiff was returned to EBRPP from EKL, was given hard food which he could not eat, and was given medication at approximately 6:30 p.m., but although he made several requests for additional medicine during the night, he received nothing until approximately 5:30 a.m. the next morning.

Beginning on May 5, 2006, upon Nurse Williams' return to work, she "deliberately denied both pain medication and a soft or liquid diet safe for a diabetic with his jaws wired shut as ordered by the EKL doctor, and denied medication for diabetes and high blood pressure.... [T]his particular Nurse had it in for me and refused to provide the medical care she actually knew I required in order to stay healthy. This Nurse refused to medicate me for an entire 12 hour shift. This was deliberate with the intent to cause me suffering as punishment for criticizing her poor medical care of me to the prison administration." Rec.doc.no. 1 at ¶ 11.

Other than these specific instances of alleged wrongdoing, the plaintiff makes only generalized assertions that on unspecified dates, EBRPP medical personnel generally failed to attend to his medical needs, failed to provide him with appropriate medication, failed to monitor his blood pressure and blood sugar levels, subjected him to threats and verbal abuse, and on several occasions denied him access to food and prescribed medication. Specifically, although he

complains generally of the medical care provided to him at EBRPP, he provides no specific examples of active participation by the named defendants other than as above-related.

The plaintiff's unsworn factual allegations of specific acts of misconduct and non-specific generalized wrongful behavior are simply insufficient to support his claim asserted against the defendants. Initially, the Court notes that the plaintiff's allegations of taunts, verbal abuse, curses and threats do not rise to the level of a constitutional violation. The law is clear in this regard that allegations of verbal abuse and harassment alone do not present claims under section 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). The allegations against the defendants regarding threats, curses and verbal abuse, therefore, are insufficient to state a claim of constitutional dimension.

Further, with regard to the plaintiff's claim that the defendant nurses denied him appropriate medical care at EBRPP and failed to provide appropriate treatment, the Court finds that there is insufficient factual support for these contentions. The plaintiff's Complaint and other pleadings are unsworn, and he has provided no affidavits or other evidence, apart from his conclusory assertions, his administrative grievances, and the voluminous record of his medical treatment at EBRPP, that the defendants were deliberately indifferent to his serious medical needs. From a review of the Physician's Orders, Progress Notes and numerous additional notations, medication charts, blood pressure monitoring charts, and insulin administration charts contained in the plaintiff's certified medical records, however, it appears that his medical condition, complaints and symptoms were not ignored by prison health care providers and that he was in fact provided with a substantial amount of medical attention during the eight (8) month period that he was confined at EBRPP, between March and October, 2006.

After his admission to EBRPP on March 1, 2006, his condition was evaluated on March 4, 2006, by a health care provider, and he was noted to be a diabetic suffering with high blood pressure and with a recently broken and wired jaw. The plaintiff acknowledged at that time that he did not recall the names of all of the medications which had been prescribed to him by the Veteran's Administration Hospital, but he did advise that he was taking insulin for diabetes and that he had been prescribed Clonidine (at an unknown dosage) to control his blood pressure. It appears that, because he advised medical personnel that he suffered with diabetes, his blood sugar level was thereafter regularly monitored, beginning on March 1, 2006 and, after such monitoring apparently resulted in information regarding the plaintiff's daily blood sugar levels, he was prescribed twice-per-day insulin by an unidentified physician, commencing on March 28, 2006. It further appears that such insulin was thereafter regularly administered as indicated, with few lapses and with monitoring conducted twice-per-week unless the plaintiff's blood sugar levels indicated a need for additional insulin or monitoring.

With regard to the plaintiff's blood pressure medication and monitoring, he was apparently prescribed Clonidine on March 16, 2006, and although blood pressure monitoring conducted thereafter reflects occasionally mildly elevated readings, such monitoring does not appear to disclose any dangerously high readings. The plaintiff's medical documentation reflects that notations were made in his medical records and charts regarding his condition, symptoms, complaints and upcoming appointments on numerous dates, including March 8, 15, 16, 28 and 30, April 10, 11, 24, 25 and 27, May 2, 3, 8, 12, 26 and 30, June 20, 24, 26 and 28, July 2, 6, 14 and 21, August 9 and 15, September 1, 6, 12, 14, 15, 20 and 29, and October 9, 2006. He was transported to EKL for surgical evaluation on April 27, 2006, for surgery on May 1, 2006, for emergency treatment after surgery on May 3, 2006, and for follow-up visits thereafter. The medication charts reflect few gaps in the provision of medications prescribed to him at EBRPP, and it should be noted that, to the extent that the plaintiff complains regarding the number and types of

medications prescribed, the medications provided to him were those determined to be appropriate by licensed physicians at EBRPP, not by the defendant nurses who were charged only with administering such medication.[4]

In short, although the plaintiff is clearly unhappy with the medical care with which was provided to him at EBRPP, it does not appear from his medical records that there is any evidence beyond the plaintiff's unsupported and unsworn assertions that the moving defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." See Domino v. Texas Dept. of Criminal Justice, supra. On this basis, it does not appear that there is any factual basis for a finding of liability against the defendant nurses.

Finally, the plaintiff's specific complaints relative to defendants Williams and Roule relate to incidents occurring principally (1) on March 28-29, 2006, on which dates the plaintiff complains that his insulin was delayed and that he was allegedly given an improper dosage of insulin and a honey bun to control his elevated, and then diminished, blood sugar levels, and (2) on May 1-3, 2006, on which dates, defendant Williams allegedly denied him appropriate medication and soft or liquid food. With regard to the events occurring on March 28-29, 2006, it appears from the plaintiff's medical records that he was in fact given his insulin on March 28, 2006, and that, if anything, the dosage was merely delayed. The next day, on March 29, 2006, when the plaintiff's blood sugar

---

[4]     The plaintiff complains that he was never provided with thirteen (13) medications which were allegedly prescribed for him by the Veterans' Administration. He further asserts that he provided a medical release form to prison officials on April, 4, 2006, which form was allegedly never sent to the V.A. A review of the referenced form, however, suggests that it is unlikely that the referenced form would have been effective inasmuch as it provided neither the plaintiff's date of birth nor his social security number, which are normally required for the release of medical records. It was not apparently until April 25, 2006, that a more complete form was provided by the plaintiff, which form was submitted to the Veterans' Administration on April 26, 2006, and which form resulted in a list of the referenced medications being provided to prison officials on May 8, 2006. Although the plaintiff asserts that he provided his own copy of the list of medications to prison officials in late April, 2006, it was not unreasonable for prison officials to wait for the official records from the Veterans' Administration, and in any event, prison physicians apparently concluded that the administration of the various medications was not medically necessary or indicated.

level indicated a high reading of 383, he was immediately provided with a second dosage of his prescribed "70/30" insulin, and when this dosage did not sufficiently lower the plaintiff's blood sugar, an additional dosage of regular insulin was administered. When the plaintiff's blood sugar level thereafter dropped to a reading of 68, he was then given a honey bun, causing his blood sugar level to rise to 225, at which time he was given his regular dosage of insulin. This occurred over the course of several hours on a single evening and, according to the prison's response to the plaintiff's administrative grievance, was in accordance with regular medical protocol and with "policy and procedure when administering the inmate's insulin." There is thus no indication that any defendant intended to cause the plaintiff harm on these dates or that the defendants' conduct was anything more than mere negligence, if that, which may not form the basis for a cause of action under § 1983. There is further no indication that this incident aggravated the plaintiff's medical condition or caused him any substantial harm in fact.

Turning to the events of May 1-3, 2006, it appears that the plaintiff was admittedly provided with no medication on May 1, 2006, inasmuch as he was to receive surgery on that date. This, however, was in full accordance with medical orders that he not be provided with anything by mouth on that date. And to the extent that the plaintiff complains that he should have been given his insulin prior to transport to EKL, it is undisputed that he was in fact provided with insulin upon his arrival at the hospital, and he complains of no substantial harm resulting from this delay. See Mendoza v. Lynaugh, supra. The plaintiff thereafter returned to the prison on the morning of May 2, 2006, at which time his morning dosage of insulin was admittedly provided, and his blood sugar level then registered 217. According to the plaintiff's medical records, he then "refused" his insulin dosage on the evening of May 2, 2006, at which time his blood sugar level registered 135, and also "refused" his insulin on the morning of May 3, 2006, which "refusals" the plaintiff disputes. The plaintiff also asserts that he did not receive any pain medication during the day on May 2, 2006, but he acknowledges that he received pain medication that evening. On the morning of May 3, 2006,

the plaintiff was returned to EKL when an electrocardiogram provided an abnormal reading. At the hospital, he was diagnosed as suffering from dehydration, and he was provided with intravenous fluids, with pain medication and with Ensure. He was returned to EBRPP on the afternoon of May 3, 2006, and it appears from his records that he was provided with his evening dosage of insulin. On May 4, 2006, his blood sugar test reflected a level of 189, which was not in disparity with many of the other blood sugar readings taken during the course of the plaintiff's confinement at the prison.

Based upon this recitation, the Court concludes that the plaintiff has failed to show that the defendant nurses exhibited deliberate indifference to his serious medical needs. Although he denies that he "refused" his insulin on the evening of May 2 and the morning of May 3, 2006, it does not appear that his blood sugar levels were abnormally elevated or were adversely affected by the failure to provide insulin on these occasions. Further, with regard to his assertion that Nurse Williams failed to provide him with appropriate nourishment upon his return from the hospital on May 2, 2006, he concedes that this failure resulted principally from Nurse Williams having "forgotten" to tell the kitchen that the plaintiff was on a liquid diet. Nor is it clear that Nurse Williams was subjectively aware that the failure to provide the plaintiff with food on that single date would subject him to a substantial risk of serious harm. Thus, this is a claim of negligence which is not actionable under § 1983.

Finally, with regard to the plaintiff's complaint that he was not provided with pain medication during the day on May 2, 2006, and was not provided with same until later that evening, this brief lapse, while regrettable and while likely resulting in discomfort to the plaintiff on that date, is not indicative of deliberate medical indifference. The plaintiff acknowledges receipt of pain medication in the evening, and he has not shown that the failure to provide this medication resulted in any substantial harm. In short, while there may have been an unfortunate delay and/or lapse in the provision of medical care to the plaintiff on May 2 and 3, 2006, this lapse occurred principally over the course of a single day and does not support a finding of deliberate medical indifference.

Finally, the plaintiff complains that after the events of May 1-3, 2006, the defendant nurses exhibited a pattern of neglect toward him, of ignoring his complaints, of subjecting him to threats and verbal abuse, and of depriving him of his medication for periods of time, all in retaliation for his complaints against them. The plaintiff's unsworn allegations in this regard, however, are not sufficiently factually specific as to the dates, times or the nurses involved to support his claims in this case and, in any event, are belied by the plaintiff's medical records which reflect no significant lapses in the provision of medication or medical care during this period.

As previously noted, in order to defeat a properly supported motion for summary judgment, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the party can satisfy a reasonable jury that he is entitled to a verdict in his favor, and this burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., supra; Anderson v. Liberty Lobby, Inc., supra. On the record before the Court, this is all that the plaintiff has provided. Accordingly, the Court finds that the plaintiff is unable to establish his entitlement to relief in this case and, in light of the paucity of evidence, that the defendants are entitled to summary judgment herein.[5]

Turning to the plaintiff's claims asserted against the remaining two (2) defendants, Deputy Gary Wilson and Nurse R. Scott, neither of whom have been properly served, this Court is authorized, pursuant to 28 U.S.C. § 1915(e), to dismiss an action or claim brought in forma pauperis if satisfied that the pleadings fail to state a claim upon which relief may be granted. The law accords judges the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. Neiztke v. Williams, 490 U.S. 319, 109 S.Ct.

---

[5] Based upon the conclusions reached by the Court in addressing the defendants' cross-motion for summary judgment, the Court need not address the plaintiff's pending cross-motions for summary judgment, which are not supported by any sworn assertions and which the Court finds do not raise any disputed issues of material fact.

1827, 104 L.Ed.2d 338 (1989). Although "detailed factual allegations" are not necessary in order to state a claim upon which relief may be granted, a plaintiff must furnish "more than labels and conclusions" or the "formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although there is no "probability requirement" at the pleading stage, "something beyond ... mere possibility ... must be alleged." Id. The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ____ U.S. ____, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. In evaluating whether a Complaint states a claim upon which relief may be granted, the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted). A § 1915(e) dismissal may be made at any time, before or after service of process and before or after an answer is filed. Green v. McKaskle, supra.

Applying this standard in the instant case, the Court concludes that the plaintiff has failed to state a claim of constitutional dimension against defendants Deputy Gary Wilson and Nurse R. Scott. First, with regard to defendant Wilson, the Court has previously dismissed all claims asserted by the plaintiff against EBRPP deputies named as defendants in this case, see

rec.doc.nos. 162 and 166, and without reiterating the reasoning and authority employed in doing so, the Court finds that the plaintiff's allegations relative to defendant Deputy Gary Wilson suffer from the same infirmities and warrant dismissal relative to this defendant for the same reasons. Further, with regard to Nurse Scott, the sole factual allegations made relative to this defendant are that, on several occasions this defendant made notations in the plaintiff's medical records and, on the morning of May 25, 2006, at approximately 4:00 a.m., she noted that the plaintiff's blood sugar level was 268 but, instead of providing him with insulin at that time, waited until the ensuing shift, which caused the plaintiff not to receive his insulin dosage until approximately two hours later. The plaintiff makes no claim, however, that this delay in treatment resulted in any substantial harm and, in the absence of such showing, there is no basis for a finding of liability relative to this defendant. See Mendoza v. Lynaugh, supra (requiring a showing of substantial harm in order to support a claim arising from a mere delay in the provision of medical care). Accordingly, the Court concludes that defendants Gary Wilson and R. Scott should be dismissed from this proceeding pursuant to 42 U.S.C. § 1915(e).[6]

RECOMMENDATION

It is recommended that the plaintiff's Motions for Summary Judgment, rec.doc.nos. 187 and 211, be denied and that the Motion for Summary Judgment of defendants Pam Porter, Carla Hawkins, Cathy Roule and Jolynn Williams, rec.doc.no. 214, be granted, dismissing the plaintiff's claims asserted against these defendants, with prejudice. It is further ordered that the plaintiff's claims asserted against defendants Gary Wilson and R. Scott be dismissed pursuant to 28 U.S.C. § 1915(e) for failure of the plaintiff to state a claim upon which relief may be granted, that the Motion

---

[6] Considering the Court's independent conclusion, made pursuant to the screening provisions of 28 U.S.C. § 1915(e), that the plaintiff has failed to state a claim against defendant Gary Wilson, the Court need not address the recently filed Motion to Dismiss of this defendant, rec.doc.no. 220, which motion should therefore be denied as moot.

to Dismiss of defendant Gary Wilson, rec.doc.no. 220, be denied as moot, and that this action be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on August 26, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**